**VALERIA GARRIGA,**

    **Plaintiff,**

**vs.**                            **Case No.: 25-cv-01935**

**ANDORHEALTH, LLC, a**
**Foreign Limited Liability Company,**

    **Defendant.**

_____/

## DEFENDANT ANDORHEALTH, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS III & IV OF PLAINTIFF'S COMPLAINT

NOW COMES Defendant ANDORHEALTH, LLC, by and through undersigned counsel, and files its Answer and Affirmative Defenses to Plaintiff's Complaint, as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of this matter arises pursuant to 28 U.S.C. §1331 with federal questions involving Title VII. An express grant of federal court jurisdiction over this federal claim is found in Title VII at 42 U.S.C.§2000e-5(f)(3).

**ANSWER**: Defendant admits only that Plaintiff purports to bring this lawsuit in this jurisdiction pursuant to the statutes referenced in Paragraph 1. Defendant denies any allegations of wrongdoing.

2.    This Court has supplemental jurisdiction over Plaintiff's state law

claims.

**ANSWER**: Defendant admits only that Plaintiff purports to bring this lawsuit on the basis of supplemental jurisdiction. Defendant denies any allegations of wrongdoing.

3. This Court has jurisdiction over Plaintiffs' claims because at all times material to this Complaint, Plaintiff worked for Defendants in Orlando, Orange County, Florida.

**ANSWER**: Defendant admits only that Plaintiff purports to bring this lawsuit in this jurisdiction and further admits Plaintiff worked for Defendant in Orlando, Orange County, Florida. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 3.

4. The illegal conduct occurred within the judicial district in and for this District.

**ANSWER**: Denied.

5. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on July 2, 2024.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 5 and therefore denies them.

6. On August 25, 2025, the EEOC issued its right-to-sue letter.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 6 and therefore denies them.

7. Therefore, this Complaint is filed within 90 days of Plaintiff

receiving her right-to-sue letter.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 7 and therefore denies them.

## PARTIES

8.    Plaintiff is an adult individual who resides in Orlando, Orange County, Florida.

**ANSWER**:  Defendant admits that Plaintiff is an adult individual but is without sufficient knowledge to admit or deny the remaining allegations set forth in Paragraph 8 and therefore denies them.

9.    At all times material hereto, Plaintiff worked for Defendant in Orlando, Orange County, Florida.

**ANSWER**: Admitted.

10.    Defendant is and was, at all relevant times, a Limited Liability Company, operating in Orange County, Florida and is within the jurisdiction of this Court and this District.

**ANSWER**: Admitted.

11.    Defendant was an employer as defined by the laws under which this action is brought and employs greater than 15 employees.

**ANSWER**: Defendant admits only that it employs more than 15 employees. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 11.

## **STATUTORY PREREQUISITES**

12.     Plaintiff is a female individual who suffered sexual harassment and retaliation.

**ANSWER**: Defendant admits only that Plaintiff identifies as a female individual. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 12.

13.     Plaintiff is a member of a class of individuals protected by Title VII and the FCRA.

**ANSWER**: Defendant admits only that Plaintiff identifies as a female individual. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 13.

14.     Plaintiff was qualified for her position.

**ANSWER**: Denied.

15.     The Defendant meets the statutory criteria for coverage as an "employer" under Title VII and the FCRA.

**ANSWER**: Defendant admits only that it employs more than 15 employees. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 15.

16.     Plaintiff meets the statutory criteria for coverage as an "employee" under Title VII and the FCRA.

**ANSWER**: Paragraph 16 states a legal conclusion to which no response is required.

17.     Plaintiff timely filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 2, 2024.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 17 and therefore denies them.

18.     On August 25, 2025, the EEOC issued its right-to-sue letter. Therefore, this Complaint is being filed within 90 days of Plaintiffs receiving their right-to-sue letter.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 18 and therefore denies them.

19.     Accordingly, Plaintiff has complied with all other requirements and all other prerequisites prior to bringing this lawsuit.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 19 and therefore denies them.

20.     Plaintiff has satisfied all administrative prerequisites to perfect her claim.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 20 and therefore denies them.

## FACTS

21.     Plaintiff was hired by Defendant on May 15, 2023, as the Director, Human Resources and reported directly to the Chief Financial Officer, Shane Streufert.

**ANSWER**: Admitted.

22.     However, shortly after Plaintiff's hire, Streufert resigned, and Plaintiff began reporting directly to the Chief Executive Officer and Owner, Raj Toleti.

**ANSWER**: Admitted.

23.     On December 7, 2023, during the Company holiday party, Plaintiff was sexually harassed by Toleti.

**ANSWER**: Denied.

24.     Toleti, who was visibly intoxicated, approached Plaintiff on several occasions and stated to her how beautiful Plaintiff looked.

**ANSWER**: Denied.

25.     While Plaintiff was uncomfortable with the many comments about Plaintiff's physical appearance, Plaintiff became even more uncomfortable when Toleti began to physically touch her without her permission.

**ANSWER**: Denied.

26.     Specifically, Toleti grabbed Plaintiff around the waist, held her hands and even kissed Plaintiff's hand's obsessively.

**ANSWER**: Denied.

27.     Toleti also grabbed Plaintiff's face and kissed her cheeks on several occasions.

**ANSWER**: Denied.

28.     When Toleti attempted to have a work related conversation with Plaintiff, Toleti gave Plaintiff the impression that he was undressing Plaintiff with his eyes.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 28 and therefore denies them.

29.     In fact, in the middle of the discussion, Toleti said to Plaintiff that "you cannot report into me, I am going to get into a lot of trouble; you cannot report to me."

**ANSWER**: Denied.

30.     At this point, Plaintiff became increasingly concerned about her safety and her ability to work in this environment.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 30 and therefore denies them.

31.     As the night progressed, Toleti continued to approach Plaintiff, grabbing her hands, kissing her on the cheeks and holding her by her hips.

**ANSWER**: Denied.

32.     Earlier in the evening, Plaintiff introduced herself to Toleti's wife, Aparna Toleti, as they had previously communicated via email or telephone but had not yet met in person.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 32 and therefore denies them.

33.     Shockingly, Aparna said to Plaintiff when she spoke to her, "oh I was wondering who this beautiful woman was that was speaking to my husband; I was not sure if I needed to worry."

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 33 and therefore denies them.

34.    Plaintiff immediately became uncomfortable with this comment because it suggested that Plaintiff and Toleti might have some romantic relationship.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 34 and therefore denies them.

35.    What's more, the Vice President of Finance, Kristen Elder, witnessed this conversation and later told Plaintiff that she too had the same interpretation of Aparna's comments.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 35 and therefore denies them.

36.    Nonetheless, Plaintiff assured Toleti's wife that Plaintiff had no personal interest in Toleti and made sure that his wife understood that Plaintiff was the Director of Human Resources and reported to Toleti and that Plaintiff would never engage in that type of behavior.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 36 and therefore denies them

37.    Plaintiff did not report the incident to anyone because Plaintiff was not exactly sure how to handle this situation as she was the sole human resources person, and the incident involved the owner of the Company.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 37 and therefore denies them.

38.     Following the holiday party, on December 8, 2023, Plaintiff asked Toleti if he remembered anything that had happened the night before during the holiday party and he stated that he did not.

**ANSWER**: Denied.

39.     As he did not recall the events of the night prior, Plaintiff felt uncomfortable discussing the matter so Plaintiff decided to say nothing in hopes that it was a "one off" due to the alcohol and that it would not happen again.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 39 and therefore denies them.

40.     However, a few months later on April 12, 2024, Toleti approached Plaintiff around 3:00 p.m. to organize an impromptu happy hour with the employees who were in the office.

**ANSWER**: Denied.

41.     Plaintiff was attempting to find a location that could host the happy hour, but it was ultimately decided by Toleti and the Chief Operating Officer, Pritesh Patel, that they would go to London House.

**ANSWER**: Denied.

42.     This was the first time Plaintiff had been in this type of setting with other employees and Plaintiff took this opportunity to get to know the employees on a personal level.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 42 and therefore denies them.

43. Plaintiff engaged in personal conversations with co-workers discussing things like dating life and different cultures.

**ANSWER**: Admitted.

44. As the evening progressed, Plaintiff realized that because she was drinking, Plaintiff should not drive home.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 44 and therefore denies them.

45. Accordingly, Plaintiff ordered an Uber and left to go home.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 45 and therefore denies them.

46. The next day, some co-workers approached Plaintiff to discuss the happy hour and said that they ended up staying way later than expected and continued to drink.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 46 and therefore denies them

47. They stated that they enjoyed the night and that this was a "normal" thing at the Company.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 47 and therefore denies them.

48. On April 17, 2024, during the weekly executive meeting, Toleti became

upset with Plaintiff because he disagreed with a statement Plaintiff made during discussions of employee performance reviews.

**ANSWER**: Denied.

49.     Plaintiff stated that "I think where we drop the ball, and we can improve as an organization if we give constant and consistent feedback so that the employees know where they stand with us."

**ANSWER**: Denied.

50.     However, this statement apparently upset Toleti, and he began to berate Plaintiff saying things like, "you better be careful what you say at this table.; you are speaking to the CEO of this organization, and you do not know what you are talking about."

**ANSWER**: Denied.

51.     He further stated, "if you are going to talk in these meetings then you better come with facts; I don't want to hear your opinion."

**ANSWER**: Denied.

52.     During this exchange, the room became extremely quiet, and everyone was visibly uncomfortable.

**ANSWER**: Denied.

53.     Plaintiff knew that this was "normal" behavior for Toleti, however Plaintiff was so upset that she finished the remainder of the workday at home.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 53 and therefore denies them.

54. An hour after the meeting, Plaintiff received a call from the Chief Product and Strategy Officer, Srini Surendraneth, who had been at the meeting, and asked if Plaintiff was somewhere where he could speak candidly.

**ANSWER**: Denied.

55. He then stated that while he agreed with everything Plaintiff had said in the meeting and trying to structure the organization and implement processes however this is not an organization where we can freely share our opinions and good ideas without getting yelled at.

**ANSWER**: Denied.

56. On April 22, 2024, during the ribbon cutting and office happy hour, Plaintiff experienced her another incident of sexual harassment by Toleti.

**ANSWER**: Denied.

57. Toleti began to repeat the same behavior as he did at the December holiday party and began to grab both Plaintiff's hands multiple times throughout the evening, kissing Plaintiff on the cheeks repeatedly and making comments such as "I have never been this comfortable with any HR person before; I love this; we are going to be such good friends forever."

**ANSWER**: Denied.

58. Throughout the evening, Plaintiff was talking to the Executive Assistant to Toleti, Erica Vallejo and Toleti approached us and started discussing how he had yelled at Plaintiff and that "I only yell at people that I love; tell her Erica, you have worked me for so many years, we argue all the time."

**ANSWER**: Denied.

59.     Vallejo confirmed this and said that the only difference is that she argues back.

**ANSWER**: Denied.

60.     During this conversation, Toleti kept stating that Plaintiff was the best HR person he had ever had and to trust him that if he did not care about Plaintiff then he would not argue with Plaintiff.

**ANSWER**: Denied.

61.     Plaintiff was baffled by his comments, and he continued to keep his arm around Plaintiff and continued to compliment Plaintiff.

**ANSWER**: Denied.

62.     During the remainder of the event, Plaintiff noticed that Toleti was becoming intoxicated, and towards the end of the event, Plaintiff went to go to the different groups and announced that it was the last call.

**ANSWER**: Denied.

63.     However, when Plaintiff approached Toleti, he asked Plaintiff to ask the bartender to extend the evening.

**ANSWER**: Denied.

64.     He continued to drink and continuously grabbed Plaintiff's face, kissing her cheeks and hands.

**ANSWER**: Denied.

65.     Plaintiff was uncomfortable and pulled away and began to clean up

the office.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 65 and therefore denies them. Defendant also denies Toleti engaged in the conduct alleged in Paragraph 64.

66.     During the cleanup, Toleti invited Plaintiff to dinner with him and other co-workers to Christini's Ristorante Italiano.

**ANSWER**: Denied.

67.     However, Plaintiff declined.

**ANSWER**: Denied.

68.     Despite Plaintiff's rejection, Toleti became aggressive and pressured Plaintiff to attend.

**ANSWER**: Denied.

69.     Plaintiff continued to decline at least three more times.

**ANSWER:** Denied.

70.     Plaintiff walked to her private office to pack up her work bag to head home and Toleti walked in with multiple clients to have them convince Plaintiff to come to dinner.

**ANSWER**: Denied.

71.     Toleti said "Valerie, you are coming to dinner and that's it!"

**ANSWER**: Denied.

72.     Plaintiff then began walking to the parking lot with the remaining employees hoping she could escape the crowd without being noticed.

-14-

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 72 and therefore denies them.

73.     However, Toleti forcefully handed Plaintiff his car keys and stated, "I cannot drive; drive me to the restaurant; I want to sit in the back and feel like a prince!"

**ANSWER**: Denied.

74.     Plaintiff unwillingly drove to the restaurant and Toleti insisted that he sit next to Plaintiff.

**ANSWER**: Denied.

75.     During dinner, Toleti had his arm on Plaintiff's chair and continued to display inappropriate sexual behavior.

**ANSWER**: Denied.

76.     Toleti also made comments such as, "where were you twenty years ago; I would have married you."

**ANSWER**: Denied.

77.     Toleti also said, "if I did not have wrinkles, I know we would be together."

**ANSWER**: Denied.

78.     Plaintiff repeatedly stated "No!" Throughout the night, Toleti was also making racial and homophobic jokes.

**ANSWER**: Denied.

79.     This entire interaction was witnessed by several co-workers who had

attended the dinner: Noel K. Srini S., an advisory board member, Nick P. and Novlet Palmer Mattis.

**ANSWER**: Denied.

80.    The next day, Plaintiff came into work upset and asked Elder if she could speak with her about the events that had taken place the previous evening.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 80 and therefore denies them

81.    Elder said that this cannot keep happening and suggested to Plaintiff that she should tell the other C-suite leaders to see if they can get him to stop.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 81 and therefore denies them.

82.    Plaintiff expressed to Elder that she was fearful of what would happen next.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 82 and therefore denies them.

83.    Later that day, Plaintiff was approached by Chief Operating Officer ("COO") Pritesh Patel, and Chief Legal Officer ("CLO") David Trevett, who asked if Plaintiff was okay because Plaintiff appeared to be upset.

**ANSWER**: Denied as framed.

84.    Plaintiff responded she was not but that she could not speak about it without crying and Plaintiff did not want the employees to see her cry.

**ANSWER**: Denied.

85.     Pritesh insisted Plaintiff share because he could tell that something was off with her.

**ANSWER**: Denied.

86.     Plaintiff then proceeded to explain what had transpired.

**ANSWER**: Denied.

87.     Plaintiff specifically stated that she was being sexually harassed by Toleti and that she was uncomfortable in the workplace.

**ANSWER**: Admitted as to what Plaintiff stated; otherwise, denied.

88.     Patel said that he would follow up and advised Plaintiff to take a few days off from work if needed.

**ANSWER**: Admitted.

89.     Plaintiff advised that she could not since payroll needed to be processed and Plaintiff had to manually enter all merit increases in the HRIS.

**ANSWER**: Admitted.

90.     However, Patel gave Plaintiff permission to work from home.

**ANSWER**: Admitted.

91.     On April 26, 2024, Plaintiff received a text from Trevett to meet with him and Patel that same day but never followed up with a designated time or location.

**ANSWER**: Admitted.

92.     On April 30, 2024, Plaintiff still had not heard from anyone, so Plaintiff sent an email requesting a follow-up to her complaint of sexual

harassment.

**ANSWER**: Denied.

93.     Trevett responded that he had launched an investigation and that he wanted to meet and discuss his findings and explore next steps together.

**ANSWER**: Admitted.

94.     On May 1, 2024, Plaintiff met with Trevett and Patel at a nearby Starbucks location.

**ANSWER**: Admitted.

95.     Trevett stated that during his investigation, no one came forward and witnessed any inappropriate behavior from Toleti towards Plaintiff.

**ANSWER**: Admitted.

96.     Plaintiff was confused as to how they were able to launch an investigation without obtaining a full statement from Plaintiff regarding the events that had taken place.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny the allegations set forth in Paragraph 96 and therefore denies them.

97.     Trevett asked Plaintiff how they could move forward and what it would look like for Plaintiff.

**ANSWER**: Denied.

98.     Plaintiff stated that she would no longer like to report directly to Toleti and instead, Plaintiff would report to Elder, who had stepped in as CFO since Streufert's departure.

**ANSWER**: Admitted.

99.     Plaintiff also requested that she have a conversation with Toleti directly to discuss the matter and to ensure that it does not happen again.

**ANSWER**: Denied.

100.    Plaintiff also asked that she not be forced to attend any after work dinners or happy hours that were not considered to be official employee events.

**ANSWER**: Denied.

101.    Trevett stated that these were not reasonable requests.

**ANSWER**: Denied.

102.    Patel then followed up with Plaintiff stating that if Plaintiff is not comfortable coming into the building, was Plaintiff sure she wanted to continue to work for Defendant.

**ANSWER**: Denied.

103.    Plaintiff responded that she could do that, explaining that the first day would be uncomfortable but that Plaintiff could be professional and that an open conversation needed to take place with Toleti as they could not ignore what had happened.

**ANSWER**: Denied.

104.    Trevett said that a conversation with Toleti was unreasonable and would not happen.

**ANSWER**: Denied.

105.    Trevett said that "ultimately he is the owner, he is the boss it does not matter who you report into, he still makes final decisions."

**ANSWER**: Denied.

106.    While Plaintiff agreed he makes the final decisions, Plaintiff preferred that there be a buffer in between herself and Toleti but was denied her request.

**ANSWER**: Defendant is without sufficient knowledge to admit or deny Plaintiff's preferences and therefore denies the allegations set forth in Paragraph 106.

107.    Plaintiff was advised that they would continue to have further discussions and get back to her with a solution.

**ANSWER**: Admitted.

108.    On May 2, 2024, Plaintiff received another text from Trevett to meet with both he and Patel at another Starbucks location.

**ANSWER**: Admitted.

109.    Shockingly, Plaintiff was informed that her employment was being terminated.

**ANSWER**: Defendant admits only that it met with Plaintiff on or around May 2, 2024 to terminate her employment after Defendant completed its investigation into Plaintiff's complaint and learned of her unprofessional and inappropriate conduct toward her colleagues. Defendant denies that this meeting was "shocking."

110.    The alleged reason for Plaintiff's termination was allegedly because

Plaintiff was intoxicated at the April 12th event.

**ANSWER**: Defendant admits that it informed Plaintiff that she was terminated as a result of her intoxication at the April 12, 2024 event. Answering further, Defendant terminated Plaintiff's employment because during the course of the investigation, Defendant learned that no employees ever witnessed Mr. Toleti engaging in any of the conduct about which Plaintiff complained could not substantiate Plaintiff's complaint. Defendant further learned that Plaintiff engaged in inappropriate, unprofessional, and offensive conversations with her colleagues at the April 12 event, including making racially insensitive comments like "Jew Boy" to a colleague and making other employees uncomfortable by discussing hers and their dating lives. This was particularly egregious considering her role as Director of Human Resources.

111.    Trevett stated that if Plaintiff signed the Non-Disclosure Agreement ("NDA") they presented to her, Plaintiff would receive two months' severance, but Plaintiff declined.

**ANSWER**: Denied.

112.    It is clear that Plaintiff was not terminated for intoxication at the April 12th event, but rather, because of Plaintiff's reporting the sexual harassment at the hands of Toleti and the hostility and retaliation subsequently received from Trevett and Patel.

**ANSWER**: Denied.

## COUNT I
## SEXUAL HARASSMENT OF PLAINTIFF
## IN VIOLATION OF TITLE VII

113.   Plaintiff realleges and adopts all allegations contained within paragraphs 1 through 112, as though fully stated herein.

**ANSWER**:  Defendant realleges and incorporates its Answers set forth above as though fully stated herein.

114.   Plaintiff was subjected to unwelcome, offensive, and harassing sexually discriminatory conduct during her employment with Defendant, which was perpetuated upon her by Plaintiff's supervisors, and this conduct was based upon and directed at Plaintiff by reason of her gender.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

115.   Plaintiff noticed Defendant, through its management, which was otherwise aware of the sexually harassing conduct, but Defendant failed to take any appropriate corrective actions.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

116.   This sexually harassing conduct was sufficiently severe and pervasive as to unreasonably interfere with Plaintiff's physical health, work performance and so as to create an intimidating, hostile and offensive work environment.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

-22-

117.    During the times referenced herein, Plaintiff was subject to constant sexually explicit commentaries.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

118.    Plaintiff was a victim of retaliatory conduct on the part of Defendants. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's rights.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

119.    During the course of her employment Plaintiff was forced to work in a sexually hostile environment. Defendant's management was put on notice of the sexual harassment suffered by Plaintiff and failed to take immediate corrective action, all to Plaintiff's detriment.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

120.    Defendant's management was aware of the hostile work environment and acquiesced in the environment.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

121.    Defendant's actions were open and obvious.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

122.    As a direct and proximate result of Defendant's harassing and hostile sexual environment, Plaintiff suffered great embarrassment, humiliation, and mental and physical anguish.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

**COUNT II**
**SEXUAL HARASSMENT OF PLAINTIFF**
**IN VIOLATION OF FCRA**

123.    Plaintiff realleges and adopts all allegations contained within paragraphs 1 through 112, as though fully stated herein.

**ANSWER**:  Defendant realleges and incorporates its Answers set forth above as though fully stated herein.

124.    Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

125.    Plaintiff was subjected to unwelcome, offensive, and sexually harassing conduct during her employment with Defendant, which was perpetuated upon him by Defendant.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

126.    Plaintiff noticed Defendant, through its management, which was otherwise aware of the sexually harassing conduct, but Defendant failed to take any appropriate corrective actions.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

127.    This sexually harassing conduct was sufficiently severe and pervasive as to unreasonably interfere with Plaintiff's physical health, work performance and so as to create an intimidating, hostile and offensive work environment.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required..

128.    During the times referenced herein, Plaintiff was subject to constant sexually explicit commentaries.

**ANSWER:** Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

129.    Plaintiff was a victim of retaliatory conduct on the part of Defendants. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's rights.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

130.    During the course of her employment Plaintiff was forced to work in a sexually hostile environment. Defendant's management was put on notice of the sexual harassment suffered by Plaintiff and failed to take immediate corrective action, all to Plaintiff's detriment.

**ANSWER**:  Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

131. Defendant's management was aware of the hostile work environment and acquiesced in the environment.

**ANSWER:** Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

132. Defendant's actions were open and obvious.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

133. As a direct and proximate result of Defendant's harassing and hostile sexual environment, Plaintiff suffered great embarrassment, humiliation, and mental and physical anguish.

**ANSWER**: Defendant has moved to dismiss Count I of the Complaint and therefore no response is required.

### COUNT III
### RETALIATION IN VIOLATION OF TITLE VII

134. Plaintiff realleges and adopts allegations contained in paragraphs 1 through 112, as though fully stated herein.

**ANSWER**: Defendant realleges and incorporates its Answers set forth above as though fully stated herein.

135. Plaintiff engaged in statutorily protected activity when she complained to Defendant regarding the sexual harassment against her.

**ANSWER**: Denied.

136. Plaintiff suffered an adverse employment action when she was

subjected to unfounded discipline and ultimately terminated.

**ANSWER**: Denied.

137.    A causal connection exists between the protected activity and the adverse action.

**ANSWER**: Denied.

138.    The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation under Title VII because it treated Plaintiff less favorably because of her complaints of sexual harassment.

**ANSWER**: Denied.

139.    Defendant does not have a legitimate, non-retaliatory reason for its firing of Plaintiff.

**ANSWER**: Denied.

140.    The conduct of Defendant and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**ANSWER**: Denied.

141.    The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of the Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter Defendant, and others, from such conduct in the future.

**ANSWER**: Denied.

142.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses.

**ANSWER**: Denied.

143.    Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**ANSWER**: Denied.

WHEREFORE, Defendant further denies each and every allegation set forth in the "**PRAYER FOR RELIEF**" Paragraph. Defendant also denies Plaintiff is entitled to any damages or any other relief.

## COUNT IV
## RETALIATION IN VIOLATION OF FCRA

144.    Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 112, as though fully stated herein.

**ANSWER**:  Defendant realleges and incorporates its Answers set forth above as though fully stated herein.

145.    Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

**ANSWER**: Defendant admits only that Plaintiff purports to bring this claim under the cited statute. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 145.

146.    At all material times, Plaintiff was qualified to perform her job duties.

**ANSWER**: Denied.

147.   Defendant retaliated against Plaintiff because of her complaints about sexual harassment.

**ANSWER**: Denied.

148.   Plaintiff engaged in a protected activity by making numerous complaints to Defendant regarding sexual harassment.

**ANSWER**: Denied.

149.   Defendant engaged in unlawful employment practices prohibited by the FCRA by retaliating against Plaintiff as set forth above.

**ANSWER**: Denied.

150.   The above retaliation was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

**ANSWER**: Denied.

WHEREFORE, Defendant further denies each and every allegation set forth in the "**PRAYER FOR RELIEF**" Paragraph.  Defendant also denies Plaintiff is entitled to any damages or any other relief.

## GENERAL DENIAL

Not including responses to Counts I & II which are subject of a Motion to Dismiss, and to the extent not expressly admitted herein, Defendant denies the allegations set forth in the Complaint, and further denies any allegations of wrongdoing.

## DEFENSES and AFFIRMATIVE DEFENSES

In addition to the foregoing, Defendant alleges and asserts the defenses and affirmative defenses set forth herein. By pleading these defenses and affirmative defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims fail in whole or in part because Plaintiff fails to state a claim upon which relief can be granted. Specifically, Plaintiff fails to sufficiently allege she experienced severe or pervasive sexually harassing conduct that altered the terms of her employment. Plaintiff's allegations regarding sexual harassment do not rise to the level of a hostile work environment as a matter of law.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant's alleged acts or omissions, if any, were in good faith and with the reasonable belief that the alleged acts or omissions, if any, were not a violation of any applicable law.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because at no time did Defendant act in a willful, wrongful, intentional, improper, wanton, fraudulent, reckless, and/or malicious manner.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate, or reasonably attempt to mitigate, Plaintiff's purported damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged complaints did not play any role in the employment decisions made and/or actions taken regarding Plaintiff. To the extent Defendant is found to have been motivated by impermissible criteria, Defendant asserts that all employment decisions in this action would have occurred even in the absence of such impermissible criteria.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any damages as a result of any actions taken by Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant had legitimate, non-discriminatory reasons for any employment decisions made with respect to Plaintiff. Specifically, Defendant learned through its investigation that Plaintiff's allegations against Mr. Toleti were unsubstantiated and that Plaintiff acted unprofessionally and inappropriately at a work event, including making inappropriate comments to colleagues, calling a colleague "Jew Boy," and engaging

in discussions and making comments regarding her colleagues' dating lives that made her colleagues uncomfortable.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs failed to take reasonable steps to mitigate her damages.

## RESERVATION OF DEFENSES

Defendant presently has insufficient knowledge or information to form a belief as to whether it may have additional, yet unasserted, affirmative defenses. Defendant therefore expressly reserves the right to assert additional affirmative defenses in the event discovery or further proceedings indicate such additional defenses would be appropriate.

WHEREFORE, Defendant seeks judgment against Plaintiff:

(a)     Denying all relief sought by Plaintiff and dismissing the Complaint in its entirety, with prejudice;

(b)     Awarding Defendant its costs and disbursements associated with this action, including reasonable attorneys' fees, to the maximum extent allowed by law; and

(c)     Granting Defendant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Defendant hereby demands a trial by jury.

Dated: October 31, 2025

  /s/ *Richard W. Smith*
Richard W. Smith, Esquire
Fla. Bar No.:  0013943
NeJame Law, P.A.
111 N. Orange Ave., Suite 1300
Orlando, Florida  32801
Tel.:  (407) 500-0000
richard@nejamelaw.com
laurie@nejamelaw.com
civilservice@nejamelaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on October 31, 2025, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of filing to all CM/ECF participants.

*/s/ Richard W. Smith*
Richard W. Smith, Esquire
*Attorney for Defendant*